IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Pension Benefit Guaranty Corporation, ) | CASE NO. 1:11 CV 00574 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| Ferfolia Funeral Homes Inc., ) | **MEMORANDUM OPINION** |
| ) | |
| Defendant. ) | |

This matter is before the Court on the Motion of Defendant Ferfolia Funeral Homes Inc. ("Ferfolia" or "Defendant") to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. Defendant alleges that Plaintiff Pension Benefit Guaranty Corporation ("PBGC" or "Plaintiff") filed its Complaint outside of the applicable statute of limitations. (Document #7.) For the reasons that follow, Defendant's Motion is DENIED.

### I. BACKGROUND

Defendant is an Ohio corporation that maintains two funeral home locations in Maple Heights, Ohio and Sagamore Hills, Ohio.

PBGC is the United States government agency that administers and enforces the nation's

defined benefit pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act of 1975 ("ERISA"). *See* 29 U.S.C. § 1301-1461 (2006 & Supp. III 2009). PBGC's insurance program guarantees certain retirement benefits for millions of American workers and retirees participating in thousands of defined benefit pension plans. PBGC oversees the statutory termination procedures for all plans covered by the insurance program.

Effective December 31, 1982, Defendant established a single-employer, defined-benefit pension plan (the "Plan") to provide pension benefits to certain employees of Ferfolia. Defendant was the administrator and contributing sponsor of the Plan, which was covered under Title IV of ERISA. Defendant amended and restated the Plan effective December 31, 1997.

On or about May 15, 2003, Defendant filed with PBGC and certified a notice of intent to terminate the Plan in a standard termination, *i.e.*, a PBGC Form 500. The PBGC Form 500 provides the core information concerning how a pension plan will be terminated under the standard termination process. 29 U.S.C. § 1341(b)(2)(A); 29 C.F.R. § 4041.25. Ferfolia selected a "termination date" of July 14, 2003 for the standard termination.

A standard termination requires that the pension plan have sufficient assets to pay all promised benefits. 29 U.S.C. § 1341(b). In a standard termination, the plan administrator of the pension plan must allocate and distribute assets to participants and beneficiaries in accordance with ERISA and applicable PBGC regulations. The plan administrator may satisfy all benefit liabilities either by purchasing annuities from a private insurer, or by distributing lump sum payments to the participants or beneficiaries. Accordingly, on April 29, 2005, Defendant distributed benefits totaling $793,351.93 to nineteen participants in the form of lump sum

payments.

On or about May 26, 2005, PBGC received a post distribution certification from Ferfolia stating that Ferfolia had completed its standard termination of the Plan and made distributions. The last distribution was on April 29, 2005.

Subsequent to the last distribution, Plaintiff selected the standard termination for a post-distribution audit. On June 28, 2006, Plaintiff issued an initial determination letter that Defendant's lump sum distributions from the plan were not calculated in accordance with applicable law. Plaintiff claimed that the distributions were made according to an earlier plan termination date than the one Ferfolia selected on the Form 500, and that the wrong interest rate was used, effectively reducing the amount participants should have received in the distributions.

By letter dated July 18, 2006, Steven Eccleston, Defendant's CPA, requested reconsideration of Plaintiff's initial determination. Plaintiff denied Mr. Eccleston's request for reconsideration by letter dated August 21, 2006. In that letter, Plaintiff issued a final determination affirming PBGC's determination that distributions from the Plan were not made in accordance with applicable law.

On March 21, 2011, PBGC filed suit against Ferfolia to recover the additional distributions allegedly owed the Plan participants and beneficiaries. Ferfolia filed the instant Motion to Dismiss on May 13, 2011. (Document #7.) In the Motion, Ferfolia alleges that PBGC filed its Complaint outside of the applicable statute of limitations. PBGC filed its Opposition to the Motion to Dismiss on June 10, 2011. (Document #10.) Ferfolia replied on June 27, 2011. (Document #11.) Thus, the Motion to Dismiss has been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is liberally construed in favor of the non-moving party. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle the plaintiff to relief. *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994).

### III. DISCUSSION

The parties agree that the applicable statute of limitations for bringing this suit is 29 U.S.C. § 1303(e)(6). This section provides, in relevant part:

> **(A)** Except as provided in subparagraph (C), an action under this subsection may not be brought after the later of –
>
> **(i)** 6 years after the date on which the cause of action arose, or
>
> **(ii)** 3 years after the applicable date specified in subparagraph (B).
>
> **(B)(i)** Except as provided in clause (ii), the applicable date specified in this subparagraph is the earliest date on which the corporation acquired or should have acquired actual knowledge of the existence of such a cause of action.

Both parties agree that the six-year statute of limitations contained in 29 U.S.C. § 1303(e)(6)(A)(i) is applicable here. The parties further agree that the six-year statute of limitations began to run when the "cause of action arose." Indeed, the statutory language is unequivocal on this point.

The parties dispute when the cause of action arose. PBGC contends that the cause of action arose when a violation of PBGC regulations occurred. Specifically, PBGC argues that the cause of action accrued when Ferfolia made distributions that were deficient and inconsistent

-4-

with the information that Ferfolia provided to PBGC on the Form 500. For the purpose of this Motion, the Court accepts that Ferfolia made incorrect distributions to nineteen Plan participants on April 29, 2005. If PBGC is correct and the cause of action arose on this date, PBGC filed its Complaint within the six-year statute of limitations.

Ferfolia contends that PBGC's cause of action arose on the Plan's termination date, July 14, 2003, rather than the date deficient distributions to participants were made. Ferfolia argues that the last day for PBGC to bring this action was July 14, 2009, six years after the Plan's termination.

The Supreme Court has held that a limitations period does not commence until the plaintiff has a "complete and present cause of action." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. Of Cal., Inc.*, 522 U.S. 192, 195 (1997) (construing the statute of limitations in 29 U.S.C. § 1451(f)). A cause of action does not become "complete and present" for limitations purposes until the plaintiff can file suit and obtain relief. *Id.* at 201.

In the Sixth Circuit, "a statute of limitations runs from the time a claim accrues . . . ." *Ternes v. Tern-Fam, Inc.*, No. 89-1648, 1990 WL 80915 at *2 (6th Cir. June 14, 1990) (citing *Turner v. Retirement Plan of Marathon Oil Co.*, 659 F. Supp. 534 (N.D. Ohio 1987), *aff'd without opinion*, 845 F.2d 327 (6th Cir. 1988)). "[C]auses of action accrue when a wrong or breach occurs." *Id.*

Here, no breach occurred until Ferfolia made allegedly deficient distributions to plan participants on April 29, 2005. Prior to the claimed unlawful distributions, there was no violation over which PBGC could file suit. A lawsuit initiated prior to the claimed unlawful distributions would have lacked a controversy to be adjudicated. Defendant's argument

unreasonably requires the statute of limitations to commence at a time when PBGC could not yet file suit, or even know that a violation of its regulations or ERISA might occur at some point in the future. This result is contrary to Supreme Court and Sixth Circuit law, and clearly is not what the statute intends. *Bay Area Laundry,* 522 U.S. at 195, 201; *Ternes,* 1990 WL 80915 at *2.

Defendant's contention that the plan termination date is the trigger date for the statute of limitations fails to make critical distinctions between bases for employer liability in distress or PBGC-initiated terminations, versus the standard termination at issue here. *See* 29 U.S.C. § 1341. *See also* 29 C.F.R. § 4041.1 (purpose and scope). ERISA provides for three types of benefit pension plan terminations: (1) distress; (2) PBGC-initiated; and (3) standard. Distress terminations and PBGC-initiated terminations focus on plans that are underfunded (plan assets are less than plan liabilities). For underfunded plans, plan participants are paid insured benefits, if necessary by means of PBGC's insurance funds. The plan termination date is the date that participants' pension benefit accruals end, and is crucial to determine the amount of plan's assets and liabilities, and the amount of underfunding. Thus, at the plan termination date, PBGC values the assets, and calculates the plan's benefit liabilities. This calculation is the basis for PBGC's claim against the terminating plan's sponsor. Therefore, the termination date in a distress or PBGC-initiated termination is when PBGC's claim against the plan sponsor arises, and is the trigger for the six-year statute of limitations contained in 29 U.S.C. § 1303(e)(6)(A)(i). *See* 29 U.S.C. § 1362(b) ("liability to the corporation . . . shall be due and payable to the corporation as of the termination date"); *see also Pension Benefit Guaranty Corporation v. Don's Trucking Company, Inc.*, 308 F. Supp. 2d 680, 682 (E.D. Va. 2003) (holding that PBGC's cause of action in a distress termination arises when employer liability is established on the termination date);

-6-

*PBGC v. Alloytek, Inc.*, 924 F.2d 620, 626 (6th Cir. 1991) (holding that employer liability springs from plan termination when there are insufficient assets to pay guaranteed benefits as of the plan termination date).

A standard termination of a single-employer defined benefit pension plan is different from the other forms of plan terminations. A standard termination applies to a pension plan that has sufficient plan assets to cover all of its liabilities as of the date of termination. Plan participants receive all of their benefits from the plan and no PBGC insurance funds are required. 29 U.S.C. § 1341(b)(1)(D). *See also* 29 C.F.R. § 4041.21(a)(4). Because no PBGC funds are needed to pay each participant the full amount of benefits, there is no employer liability in a standard termination. PBGC has no claim against the sponsor on the termination date. 29 U.S.C. §1341(b). *See also* 29 U.S.C. § 1362. Thus, the termination date does not coincide with the accrual of a cause of action that would trigger the six-year statute of limitations. 29 U.S.C. § 1303(e)(6)(A)(i). The statute of limitations is not triggered until some violation of ERISA or PBGC regulations occurs — such as the unlawful distribution of deficient payments to plan participants.

Ferfolia's argument that plan termination triggers the statute of limitations relies extensively on *Don's Trucking*, a case that involved distress termination. In that case, the issue was whether PBGC's action against the plan sponsor for employer liability under 29 U.S.C. § 1362 was filed outside of the 29 U.S.C. § 1303 limitations period. Ferfolia quotes the court in stating that, "PBGC's current cause of action arose upon plan termination, due to the fact that '[employer] liability . . . springs from . . . plan termination.'" *Don's Trucking*, 308 F. Supp. 2d at 682 (quoting *Alloytek, Inc.*, 924 F.2d at 626). However, that holding applies to a claim under 29

U.S.C. § 1362 for employer liability, which is not present in a standard termination like the one here. The full quote from *Alloytek* recited in *Don's Trucking* makes clear that the latter case's holding applies only to situations where there is employer liability on the termination date:

> Section 1362 of 29 U.S.C. refers to an employer's liability where there are insufficient assets to pay guaranteed benefits as of the plan termination date. The liability of the employer under 29 U.S.C. § 1362 springs from rather than ceases upon plan termination.

*Alloytek*, 924 F.2d at 626 (internal citations omitted). Section 1362 of 29 U.S.C. does not provide for a cause of action against the employer in a standard termination, where there is no employer liability. Thus, *Don's Trucking*, and the *Alloytek* decision cited by that court, are not applicable here.

Ferfolia contends that the statute of limitations contained in 29 U.S.C. § 1303(e)(6) accommodates any difference in PBGC's enforcement of standard and involuntary plan terminations by providing two different limitations periods. Ferfolia essentially claims that PBGC's enforcement authority is not affected in a standard termination situation if the plan termination date triggers the statute of limitations, and the six-year statute of limitations expires even before the occurrence of a noncompliant act that gives rise to a cause of action, because the three-year statute of limitations allows PBGC to bring suit if and when a violation actually occurs. This argument basically concedes that the termination date does not give rise to a cause of action in a standard termination. Indeed, Ferfolia fails to explain what cause of action PBGC possibly could bring on the termination date for a standard termination.

As discussed, a noncompliant act that gives rise to a cause of action is required to trigger a statute of limitations, including both the six-year and three-year limitations periods contained in

-8-

29 U.S.C. §1303(e)(6). As Plaintiff points out in its Opposition, the moment in which a cause of action arises cannot, by definition, be known until a noncompliant action has taken place.

The Court need not reach the question of whether PBGC's interpretation of the statute of limitations is entitled to *Chevron* deference. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). PBGC's interpretation is unassailable under Supreme Court and Sixth Circuit law. Section 29 U.S.C. § 1303(e)(6) incorporates the standard federal rule that the limitations period commences when the plaintiff has a "complete and present" cause of action. For the reasons discussed, this did not occur until the date of distribution of Plan benefits — April 29, 2005. PBGC's filing of its Complaint on March 21, 2011 is therefore timely and not barred by the statute of limitations.

## IV. CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Dismiss (Document #7) is DENIED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: July 20, 2011